## SUPREME COURT.

JOHN RANKIN, JR., receiver, &c., respondent, agt. HENRY H. ELLIOTT, appellant.

The 10th section of the general railroad act of 1850 (*Sess. Laws of* 1850, *chap.* 140, *p.* 211,) declares that each stockholder shall be individually liable to the creditors of the company, to an amount equal to the amount unpaid on the stock held by him, for all the debts and liabilities of the company, until the whole amount of the capital stock so held by him shall have been paid to the company. The same section also makes the stockholders jointly and severally

liable to the laborers and servants of the company for services performed, &c. It then provides that the stockholders shall not be liable to an action therefor before an execution shall be returned unsatisfied *against the corporation.*

Admitting that this last portion of the section applies to the creditors generally, equally with the laborers and servants of the company, (of which there is no doubt,) the question is,

Has a general creditor of the company by a *prior* judgment, with an execution thereon returned unsatisfied, a lien or prior claim upon these demands for unpaid subscriptions for stock, in preference to other subsequent or junior general judgment creditors of the company, who have in like manner exhausted their legal remedies against the corporation ?    *Held,* that he has not.

Where such subsequent or junior judgment creditors have proceeded by action against the railroad company in behalf of themselves and all the other creditors of the corporation, and obtained an injunction order restraining the company from disposing of or parting with their effects, &c., also an order of sequestration against the company, an order of reference, and an order restraining proceedings at law by all the creditors of the company, and directing the creditors to exhibit their claims before the referee, &c., and an order appointing a receiver, an action brought subsequently thereto by such prior judgment creditor against the stockholders to recover and apply the amount of their unpaid subscriptions to the payment of his judgment, will be restrained by the court from further prosecution.

Whatever preference the commencement of an action by one creditor may give over another creditor who brings a subsequent action against the same stockholder, under the section referred to, it settles nothing in respect to proceedings previously commenced under the Revised Statutes with a view to a sequestration of the effects of the corporation for the benefit of the creditors generally.

By force of the proceedings in the action for sequestration and for a receiver, &c., all the stock, property, *things in action* and effects of the company are placed in the hands of the court, and beyond the reach of any particular creditor, except by coming in under those proceedings for a rateable share upon an equitable distribution of the effects.

*Cayuga General Term, June,* 1856.

T. R. STRONG, WELLES *and* SMITH, *Justices.*

APPEAL from an order at special term enjoining defendant, Elliott, against the further prosecution of four several actions against John S. King, Alexander S. Diven, Eben Smith and Franklin E. Smith respectively, &c

S. A. FOOT, *for appellant.*
H. O. CHESEBRO, *for respondent.*

Rankin, jr., agt. Elliott.

By the court—WELLES, Justice. On the 14th day of September, 1854, Morse, Pierson and Phelps recovered judgment in this court against the Canandaigua and Niagara Falls Railroad Company for $901.70, which was docketed on that day in the office of the clerk of Ontario county. After an execution issued upon that judgment was returned unsatisfied, and on the 19th day of December, 1854, the plaintiffs therein commenced an action in this court, in behalf of themselves and all other creditors of the company, and obtained an injunction order against the company, restraining the company from disposing of, or parting with their effects, &c.

Afterwards, and on the 2d day of January, 1855, the plaintiffs in that action obtained an order of sequestration against the company, and an order referring it to a referee to appoint a receiver, and for other purposes, which resulted in the appointment of the plaintiff in this action as such receiver, who filed his bond on the 18th day of January, 1855.

On the same day that the order was made referring it to a referee to appoint a receiver, and at the same term of the court, another order was made in the same action restraining proceedings at law by all the creditors of the company, and directing the creditors to exhibit their claims before the referee, and become parties to the action, in six months from the first publication of the order, and in default thereof to be precluded, &c., and directing the order to be published once a week for six weeks in the state paper, and in several other papers indicated in the order.

The summons and complaint in the action in which the foregoing orders were made, were filed in the office of the clerk of Ontario county on or before the 4th day of January, 1855, that being the county designated as the place of trial.

On the 4th day of August, 1854, the defendant in this action obtained a judgment against the railroad company for $3,035.43, which was docketed in Ontario county on the 5th of the same month. After execution on this judgment was returned unsatisfied, and on the 6th day of January, 1855, summonses and complaints were made out in favor of the defendant in this

action against King, Diven and the two Smiths respectively, and were served upon them as follows : on King, January 13th, 1855; on Diven, January 15th, 1855, and on E. and F. E. Smith, January 8th, 1855.

These actions were severally brought under the tenth section of the general railroad act of 1850, (*Sess. Laws of* 1850, *ch.* 140, *p.* 211,) against the defendants therein respectively as stockholders, to recover unpaid subscriptions to the capital stock of the company. The defendants have all appeared and answered the complaints, and the actions have been several times noticed for trial, but have not been tried, and are still pending in this court.

The same order for the appointment of a receiver, made January 2d, 1855, among other things, directs the receiver to proceed to collect the moneys due the corporation; and he has commenced actions against King, Diven and the Smiths, to recover the amounts due from them respectively for the same unpaid subscriptions to the capital stock of the company, for which the actions were brought against them by the defendant, Elliott, as above stated.

The aggregate amount of unpaid judgments against the company exceeds $40,000, of which rising of $20,000 have been established by plaintiffs, and persons holding them, before the referee, in pursuance of the orders appointing the referee, and directing the creditors to exhibit their claims before the receiver, &c., as before stated.

The complaint in this action, which was verified February 6th, 1856, among other things, prays that the defendant, Elliott, be restrained from the further prosecution of the actions brought by him against King, Diven and the Smiths, or from collecting or receiving, or endeavoring to collect or receive, from the defendants in those actions, any of the unpaid subscriptions by them to the capital stock of the company.

The defendant's answer in this action, which was verified March 20th, 1856, admits the matters of fact stated in the complaint.

At a special term held at Canandaigua in April, 1856, an

order was made, upon due notice, and after hearing of the parties, enjoining the defendant from the further prosecution of the actions so brought by him against King, Diven and the Smiths, and from collecting or receiving from them any part of their unpaid subscriptions to the said capital stock, &c.

From that order this appeal is brought.

At the time the action was commenced by Morse, Pierson and Phelps against the railroad company, in behalf of themselves and the other creditors—particularly upon the making of the orders in that action on the 2d of January, 1855—all the effects of the company, including its claims against King, Diven and the Smiths, for unpaid subscriptions for stock, were taken possession of by the court for the benefit of the creditors of the company generally, and thereby became placed in the custody of the law. The section of the railroad act, which the defendant claims entitles him to sustain his action against the delinquent stockholders, applies equally to all creditors who have exhausted their remedy at law against the company.

The defendant claims that he has obtained a lien upon these demands for unpaid subscriptions for stock, in preference to other creditors of the corporation, which claim is founded upon the fact that he has asserted his right by bringing an action therefor before any other creditor.

At the time the order of sequestration was made in this case, the defendant occupied the position of a general creditor of the railroad company by judgment, with an execution thereon returned unsatisfied. This judgment was prior in time to that of the creditor upon whose application the sequestration was ordered. But it is not perceived how that fact alone could create a lien or preference over subsequent judgment creditors, who had in like manner exhausted their legal remedies against the corporation. The statute referred to certainly gives no such preference. The tenth section merely declares that each stockholder shall be individually liable to the creditors of the company to an amount equal to the amount unpaid on the stock held by him, for all the debts and liabilities of the company, until the whole amount of the capital stock so held by him

shall have been paid to the company. The same section also makes the stockholders jointly and severally liable to the laborers and servants of the company, for services performed, &c. It then provides that the stockholders shall not be liable to an action therefor before an execution shall be returned unsatisfied against the corporation.

Admitting that this last portion of the section applies to the creditors generally, equally with the laborers and servants of the company, which I think cannot be doubted, still the section leaves judgment creditors, whose judgments were not recovered for services rendered, upon an equal footing, without any discrimination in respect to the times the debts were contracted, or the judgments therefor recovered.

Whatever preference the commencement of an action by one creditor may give over another creditor, who brings a subsequent action against the same stockholder, under the section referred to, it settles nothing in respect to proceedings previously commenced under the Revised Statutes with a view to a sequestration of the effects of the corporation for the benefit of its creditors generally.

It is not necessary here to inquire whether one such creditor might not sustain an action under the above tenth section of the railroad act, against one among a number of stockholders who were equally delinquent, and compel him singly to satisfy the creditor, and the others to remain undisturbed in their delinquency : or whether one out of a number of such creditors could maintain actions against all the delinquent stockholders, the result of which might be the appropriation to the single creditor of the whole available effects of the company, to the exclusion of all other creditors equally entitled—provided no proceedings have been instituted on behalf of the creditors generally, with a view to an equitable rateable assessment upon the delinquent stockholders, and distribution among the creditors ; or whether the section referred to does not rather contemplate such equitable proceeding in the first instance. But after such proceedings have been instituted and progressed to the extent that they have gone in this case, it seems to me to be

within the acknowledged power of the court, and according to the most obvious principles of equity, that a single creditor, aiming at an appropriation of the whole effects of the company, to the exclusion of other creditors equally entitled, should not afterwards be permitted to use the court and its process for the purpose of promoting such aims.

When the court, in a proceeding within its jurisdiction, has regularly sequestered the estate and effects of a debtor for the benefit of creditors generally, it will not afterwards permit an individual creditor to use its process to defeat or impair such proceeding, without a prior legal or equitable lien upon the property or effects which he is seeking to reach. If he attempts to do so, after notice of the other proceedings, I do not perceive why he is not in contempt; and it seems to me that nothing but the want of such notice should shield him from the consequences of being adjudged in contempt. But whether he has notice or not, I entertain no doubt of the power and duty of the court to restrain him whenever the case is properly brought to its notice. (*Paxton* agt. *Douglass*, 8 *Ves. Jur.* 520—*Sumner's ed. and notes.*)

It is quite immaterial, in view of the question to be decided in this case, whether the receiver was appointed under the 36th section of title 4, (2 *R. S.* 463,) or under any other law. There can be no doubt, I apprehend, that a receiver under that section may sustain an action against a debtor of the corporation. He would have to obtain directions, or permission of the court to prosecute; and if he commenced an action without such permission, his proceedings would probably be set aside on motion.

In this case the receiver was directed, in the order for his appointment, to collect all moneys due the corporation.

The section provides in terms for sequestrating the stock, property, *things in action and effects* of the corporation, and for the appointment of a receiver; and one of the orders of the 2d of January follows the language of the section. The terms " things in action and effects," clearly embrace these claims against the delinquent stockholders.

By force of the proceedings in the action in which those

orders were made, all the stock, property, things in action and effects of the company, were placed in the hands of the court, and beyond the reach of any particular creditor, except by coming in under those proceedings for a rateable share upon an equitable distribution of the effects.

The defendant cannot proceed with his actions to judgment and execution without involving a direct conflict with the action previously commenced in behalf of the creditors generally, and thwarting the benign and equitable provisions of the statute.

For these reasons the order appealed from should be affirmed.